IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD HUDSON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 16-2032 |
| CATCH, INC., et. al., | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

In this action, Plaintiff Ronald Hudson ("Plaintiff" or "Hudson") asserts claims against his former employer, CATCH, Inc. ("CATCH")[1] and two of its employees, Dena Della Ducata ("Ducata") and Raymond A. Pescatore, Jr. ("Pescatore") (collectively, "Defendants") for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 et seq., in connection with the termination of his employment by CATCH.  In the present motion (Doc. No. 14), Defendants seek dismissal of Plaintiff's First Amended Complaint (Doc. No. 9) ("Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and in the alternative, seek to strike certain elements of the Amended Complaint.  For the reasons discussed below, the motion will be granted in part and denied in part, and Hudson will be

---

[1] CATCH does business under the name Community Mental Health/Mental Retardation Center.

granted leave to file a Second Amended Complaint consistent with the terms of this Memorandum Opinion.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The Amended Complaint and the documents submitted by the parties reflect the following facts.[2] Hudson began working for CATCH in 2003 and held the position of security advisor at the time of his termination on March 18, 2015. Am. Compl. ¶¶ 21, 94-96. Among Hudson's duties was patrolling CATCH's facilities. Id. ¶ 22. On or about July 25, 2014, while patrolling CATCH's facilities, Hudson discovered the body of a deceased CATCH resident lying face down in a bathtub. Id. ¶¶ 23-25. On July 29, 2014, Hudson received a telephone call informing him that someone had committed vandalism in the deceased resident's room. Id. ¶ 33. When Hudson arrived on the scene, he learned that the vandal had cut himself while breaking in through a window and found that there "was blood everywhere." Id. ¶¶ 34-35. After these events, Hudson "was having trouble sleeping, started smoking cigarettes and he became scared of leaving his shower curtains closed." Id. ¶ 41. On or about August 8, 2014, Hudson informed his supervisor "that he was not handling finding a dead body well." Id. ¶ 40. After that conversation, Pescatore began to treat Hudson differently, including abruptly discontinuing normal interactions and yelling at Hudson in front of CATCH residents. Id. ¶¶ 42-43, 55. In or

---

[2] "In deciding a motion to dismiss, we may consider 'the allegations contained in the complaint, exhibits attached to the complaint and matters of public record,' and any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" Goldwire v. City of Philadelphia, 130 F. Supp. 3d 936, 939-40 (E.D. Pa. 2015) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). The documents that will be considered here were either attached to the Amended Complaint or filed in proceedings before the Pennsylvania Human Relations Commission or the Equal Employment Opportunity Commission and are central to establishing whether the Court has jurisdiction over this action.

around early November 2014, Hudson was overlooked for promotion to the position of senior security supervisor, despite his 24 years' prior service as a security guard and supervisor. Id. ¶¶ 49-50. CATCH gave the position instead to an employee with only eight years of experience "and no degrees." Id. ¶ 51.

On January 8, 2015, Hudson spoke with CATCH CEO, Jim Kennedy, to explain that the incident in which he found the dead body was still affecting him. Id. ¶ 59. Kennedy advised him to "[t]ake a week off and get yourself together." Id. ¶ 60. Hudson sought application papers for benefits under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., but CATCH's Human Relations Director, Ducata, tried to persuade him not to file for FMLA leave, but to instead file for short-term disability on the grounds that his condition was not serious enough to warrant use of the FMLA. Id. ¶¶ 61-64. In a subsequent conversation, Ducata again refused to give Hudson FMLA application documents. Id. ¶¶ 65-66. When Hudson began reading information to her from documents he had obtained from the Department of Labor website regarding his FMLA rights, Ducata tried to snatch the papers out of Hudson's hands. Id. ¶¶ 67-68. At that point a subordinate intervened and told Hudson his request for FMLA documents had to be made in writing. Id. ¶ 69. Despite making additional requests, Hudson did not receive the FMLA documents from CATCH, and Ducata informed him instead that he was on sick leave without pay until CATCH determined his eligibility for short-term disability benefits. Id. ¶¶ 70-74. On February 13, 2015, Hudson emailed Ducata to complain that he had not received payment for vacation time taken during the course of his illness. Id. ¶ 79. Hudson ultimately filed an FMLA request and it was approved on February 13, 2015. Id. ¶ 80.

On or about March 4, 2015, Hudson started taking medication for anxiety and began treatment with a therapist. Id. ¶ 81. Hudson suffered from a form of Post-Traumatic Stress

Disorder ("PTSD"). Id. ¶ 20. On or about March 6, 2015, he met with Ducata and Pescatore along with another CATCH employee, Jasper Gramby ("Gramby"), to discuss his return to work. Id. ¶ 82. Ducata and Pescatore demanded that Hudson take a demotion and return to regular security guard status. Id. ¶ 83. When Hudson showed Ducata and Pescatore a doctor's note stating that he was cleared to return to work, they questioned his ability to do so. Id. ¶¶ 84-86. On or about March 10, 2015, Hudson provided CATCH's Human Relations Department with another doctor's note clearing him to return to work, but he was told not to return to work until further notified. Id. ¶ 89. Hudson returned to work at CATCH's direction on March 16, 2015. Id. ¶¶ 90-91. At that time, he was informed that he had been demoted and was asked to sign a new job description that included lower pay. Id. ¶¶ 91-92. Plaintiff refused to sign and was sent home. Id. ¶ 93. On March 18, 2015, Hudson again reported for work and was again asked to sign the new job description. Id. ¶ 94. Hudson refused to sign and was sent home again. Id. ¶ 95. Later that night, Hudson received an email from Ducata informing him that CATCH had terminated his employment. Id. ¶ 96.

On March 11, 2015, Hudson filed a charge against CATCH with the Pennsylvania Human Relations Commission ("PHRC"), which was designated as PHRC Case No. 201404429. Am. Compl. Ex. A (Doc. No. 9-1). The charge alleged counts for disability discrimination and for retaliatory discharge. Id. Counts I and II. The charge also was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Id. at 4 (Doc. No. 9-1 at 5). On June 15, 2015, Hudson filed a second charge against CATCH, this time with the EEOC, designated as EEOC Charge No. 530-2015-03265. Am. Compl. ¶ 16; id. Ex. B (Doc. No. 9-2). The second charge asserted substantially the same facts that were the basis of the first charge, but did not specify claims in separate counts. Id. The second charge named CATCH employees, Ducata,

4

Gramby and Pescatore, as aiders and abettors. Am. Compl. Ex. B, at 5 (Doc. No. 9-2 at 6). It also was cross-filed with the PHRC. Id. at 7 (Doc. No. 9-2 at 8).

As reflected in a form entitled "U.S. Department of Labor Wage and Hour Division Receipt for Payment of Back Wages, Liquidated Damages, Employment Benefits, or Other Compensation," Hudson acknowledged payment of wages or benefits "for the period beginning with the workweek of 05/09/2013 through the workweek ending 5/09/2015" in the amount of $7,046.98.[3] Mot. Ex. 1, at 9 (Doc. No. 14-3 at 1). The receipt designated the payment as back wages.[4] Id. On August 31, 2015, Hudson withdrew his charge in PHRC Case No. 201404429. Am. Compl. Ex. A, at 6 (Doc. No. 9-1 at 7). On January 29, 2016, the EEOC issued a right to sue letter to Hudson with respect to EEOC Charge No. 530-2015-03265. Id. Ex. C. Hudson then filed his lawsuit on April 28, 2016.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely

---

[3] The Department of Labor receipt form is dated September 4, 2015. Mot. Ex. 1 (Doc. No. 14-3). There is no indication of the date on which the payment actually was made.

[4] The parties both assert in their briefs that this payment of back wages was the result of a pro se complaint Hudson filed with the Department of Labor Wage and Hour Division. Mot. at 5-6; Opp. at 6.

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 556-57 (internal quotation marks omitted)). "In light of Twombly, 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed conduct].'" Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). "'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. . . ." Great W. Mining, 615 F.3d at 177 (quoting Twombly, 550 U.S. at 556). It requires "'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556). In determining the adequacy of a complaint, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011).

### III. DISCUSSION

#### A. Defendants' Argument that This Court Lacks Jurisdiction Because Hudson Voluntarily Withdrew the First Discrimination Charge is Not Supported by the Current Record

Defendants argue that this Court lacks subject matter jurisdiction over Hudson's claims because Hudson voluntarily withdrew his initial charge of discrimination. Mot. at 6-7. They assert that because Hudson's second charge "allege[ed] the same facts and claims as his original PHRC charge" and Hudson withdrew the first charge, he was barred from asserting any and all ADA and PHRA claims. Id. at 7. Defendants' sole authority for that proposition is Lewis v. Norfolk S. Corp., 271 F. Supp. 2d 807 (E.D. Va. 2008). In Lewis, the EEOC unilaterally reconsidered a charge that the plaintiff had voluntarily withdrawn almost seven months earlier

despite the fact the agency previously had approved the withdrawal of the charge. The EEOC then issued a right to sue letter. Id. at 813-14. The court determined that the applicable regulations did not provide the EEOC the authority to sua sponte reconsider a charge that had been voluntarily withdrawn. Id. at 814-15. That ruling has little relevance to the present action. Here, Hudson first filed a second charge and then withdrew the prior charge, much in the way that a litigant might file an amended complaint and by doing so, voluntarily supersede his or her earlier complaint. Hudson's request to withdraw the first charge specifically identified that charge as PHRC Case No. 201404429. It did not address his EEOC Charge No. 530-2015-03265. Thus, Hudson had a charge pending at all times. He merely withdrew the earlier charge in favor of the later one. Unlike in Lewis, the question of the EEOC's authority to reconsider its decision to approve a request to withdraw a charge is not relevant here.

      Defendants also attempt to suggest that Hudson's withdrawal of his first charge was the result of the settlement of the claim for back wages. Mot. at 6. Nothing in the record substantiates this suggestion. The receipt form that Defendants attached to their motion was issued by the Department of Labor and not the PHRC or the EEOC. Mot. Ex. 1, at 1 (Doc. No. 14-3 at 1). It specifies that the payment was for back wages. Id. The Amended Complaint alleges that Hudson "had not been paid for the use of [his] vacation time from January 22, 2015-February 6, 2015 inclusive." Am. Compl. ¶ 79. There is nothing in the present record to establish that the payment of back wages was a settlement of Hudson's claims for discrimination and retaliatory termination. Defendants may present at summary judgment or at trial any evidence they may have to show that Hudson voluntarily withdrew all of his claims or that he settled them. On the present record, their motion to dismiss for lack of subject matter jurisdiction fails.

### B. Hudson Will be Granted Leave to Amend his Complaint to Reflect that His PHRA Claim Has Been Properly Exhausted Before the PHRC

Defendants assert that Hudson's PHRA claim should be dismissed because he filed the present lawsuit before the one-year waiting period on his PHRA claim had passed. Mot. at 8-10. The PHRA grants the PHRC exclusive jurisdiction over complaints filed with it for a period of one year. 43 Pa. Cons. Stat. § 962(c). A complainant may file an action in court, however, if the PHRC dismisses the complaint or fails to arrange a conciliation agreement to which the complainant is a party within one year of the filing of the PHRA complaint. Id.; Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 920 (Pa. 1989). An action filed in court prior to the expiration of one-year waiting period is subject to dismissal for failure to exhaust administrative remedies. Schaeffer v. Indep. Blue Cross, Inc., No. 03-CV-5897, 2005 WL 181896, at *5 (E.D. Pa. Jan. 26, 2005); McGovern v. Jack D's, Inc., No. Civ. A. 03-5547, 2004 WL 228667, at *8 (E.D. Pa. Feb. 3, 2004). However, on numerous occasions, courts have permitted plaintiffs who filed PHRA claims prematurely to amend their complaints after the passage of the one-year period to reflect that they have properly exhausted their claims with the PHRC. See, e.g., Rosetsky v. Nat'l Bd. of Med. Exam'rs of U.S., Inc., 350 F. App'x 689, 703 n.3 (3d Cir. 2009); McGovern, 2005 WL 228667, at *5 (collecting cases); see also 43 Pa. Cons. Stat. § 962(a) (PHRA provisions "shall be construed liberally for the accomplishment of the purposes thereof"). Hudson has requested the opportunity to further amend his Amended Complaint to show that the one-year period has now been exhausted. This case is at its early stages; no answer has been filed and discovery has not yet commenced. The one-year statutory period has now passed and there will be no undue prejudice to Defendants if Hudson is granted leave to amend to reflect that fact. Federal Rule of Civil Procedure 15(a)(2) directs that courts "should freely give leave when justice so requires." Accordingly, Hudson will be granted leave

to file a Second Amended Complaint reflecting that his PHRA claim meets the exhaustion requirement.

### C. Hudson Has Failed to State Claims under the ADA and PHRA for Discrimination and Retaliation Against a Person with a Disability, But Has Adequately Pled Claims Based on His Being "Regarded as" Having a Disability

Defendants contend that Hudson has failed to state a claim under the ADA and the PHRA. Mot. at 8-13. To establish a prima facia case of discrimination under the ADA, a plaintiff must show that: "'(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.'" Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)). "A prima facie case is an 'evidentiary standard, not a pleading standard.'" Connelly v. Lane Constr. Corp., 809 F.3d 780, 789 (3d Cir. 2016) (quoting Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510 (2002)). A determination whether a plaintiff has established a prima facie case, "is an evidentiary inquiry," and is "'not a proper measure of whether a complaint fails to state a claim.'" Id. (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009)). A complaint is not required to establish the elements of a prima facie case. Id. Instead, "'[t]he post-Twombly pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." Id. (quoting Phillips v. Cnty. of Allegheny, 15 F.3d 224, 234 (3d Cir. 2008)).

In their motion, Defendants have challenged whether Hudson has sufficiently pled the first element of a prima facie case of discrimination; "that he is a disabled person within the meaning of the ADA," Williams, 380 F.3d at 751. Mot. at 11-13. A person is disabled under the

ADA if they have: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102.

> Examples of major life activities include: caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." [29 C.F.R. § 1630.2(i)]. An impairment is defined as "[a]ny physiological disorder, or condition . . . affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). "Substantially limited" means that an individual is either: (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner or duration under which he or she performs the activity as compared to the condition, manner or duration under which the average person in the general population performs the activity. 29 C.F.R. § 1630.2(j)(1).

Palish v. K & K RX Servs., L.P., No. 13-CV-4092, 2014 WL 2692489, at *5 (E.D. Pa. June 13, 2014).

Plaintiff has alleged that he "suffers from a form of [PTSD]" as a result of finding the dead body of a CATCH resident in a bathtub. Am. Compl. ¶¶ 20, 40, 81. He has alleged that after that incident, he "was having trouble sleeping, started smoking cigarettes and he became scared of leaving his shower curtains closed." Id. ¶ 41. Hudson has further alleged that as a result of the incident, he "started taking medication for anxiety and began to see a therapist." Id. ¶ 81. Although Hudson's allegations are somewhat bare bones, they are sufficient to state that he suffers from a disability as the result of anxiety and PTSD. He has failed, however, to allege that he is "significantly restricted as to the condition, manner or duration under which he . . . performs" a "major life activity." 42 U.S.C. § 12102. Hudson is correct when he points out that the ADA was amended, effective in 2009, to relax the standards for establishing a disability. See Szarawara v. Cnty. of Montgomery, No. 12-5714, 2013 WL 3230691, at *2 (E.D. Pa. June 27, 2013) (quoting 29 C.F.R. § 1630.2(j)(1)) (the requirement that the impairment impose a

substantial limitation "shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA . . . [it] is not meant to be a demanding standard"). However, nothing in the Amended Complaint addresses the extent to which Hudson's alleged anxiety or PTSD affects his ability to perform a major life activity. As a result, his Amended Complaint is deficient and fails to state a claim under Section 12102(1)(A) or the PHRA.[5] In his forthcoming Second Amended Complaint, see supra Section III(B), Hudson may attempt to replead his claim with sufficient factual detail to state a viable claim that he was disabled for the purposes of the ADA and the PHRA.

Nevertheless, Hudson also can state a claim of discrimination by alleging that he was regarded by his employer as having a disability. 42 U.S.C. § 12102(1)(C).

> An individual meets the requirement of "being regarded as having such an impairment" [for the purposes of Section 12102(1)(C)] if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

Id. § 12102(3)(A). "Prohibited actions 'include but are not limited to' termination or denial of any privilege of employment." Koci v. Cent. City Optical Co., 69 F. Supp. 3d 483, 486 (E.D. Pa. 2014) (quoting 29 C.F.R. § 1630.2(l)(1)).

Hudson has alleged that, when he sought to return to work after taking FMLA leave, Ducata and Pescatore challenged the validity of his doctor's note that cleared him to return to work, suggested that he was not fully capable of returning to the work he previously had

---

[5] The elements that a plaintiff must allege to state a claim under the PHRA are substantially the same as those stated in Section 12102. Compare 43 Pa. Cons. Stat. § 954 (p.1); with 42 U.S.C. § 12102. The ADA was amended, effective in 2009, to relax the standard for showing the existence of a disability, while the PHRA was not so amended. Szarawara, 2013 WL 3230691, at *2. However, because Hudson's Amended Complaint cannot meet the less stringent ADA standard, it is unnecessary at this time to consider what additional pleading Hudson would need to meet the more stringent PHRA standard.

performed, demanded that he return only at a lesser position with lesser pay and terminated his employment when he refused to do so. Am. Compl. ¶¶ 82-96. A close proximity in time between an employee's request for FMLA leave and a demotion or termination supports an inference that the employer regarded the employee as disabled. McFadden v. Biomedical Sys. Corp., No. CIV. A. 13-4487, 2014 WL 80717, at *4 (E.D. Pa. Jan. 9, 2014); Kiniropoulos v. Northhampton Cnty. Child Welfare Serv., 917 F. Supp. 2d 377, 386-87 (E.D. Pa. 2013) (collecting cases). Thus, Hudson has adequately stated a claim for discrimination based on his employer regarding him as disabled.[6]

Defendants argue that Hudson's claim is deficient because claims based on being regarded as disabled cannot stand where the alleged disability is a "temporary impairment[] of short duration with little to no long-term impact." Mot. at 11-12; see 42 U.S.C. § 12102(3)(B) ("regarded as" disabled claims cannot be based on "impairments that are transitory and minor"). Whether an employer perceives an impairment to be temporary or of little long-term impact, however, is a question of fact. Williams, 380 F.3d at 767-68; Deane v. Pocono Med. Ctr., 142 F.3d 138, 144 (3d Cir. 1998). In some instances, it may be clear from the complaint that the plaintiff is alleging only such injuries. See Williams, 380 F.3d at 765 (noting that "the EEOC has suggested, for example, that broken limbs, sprained joints, concussions, appendicitis, and

---

[6] The PHRA applies a similar standard. "Under the PHRA's 'regarded as' standard, 'the relevant inquiry is whether the [employer] perceived [the plaintiff] as disabled within the meaning of the PHRA and, thus, is a question of intent, and not whether [plaintiff] was actually disabled at the time of the adverse employment actions. . . .[The plaintiff] must also show that [his] employer believed that [his] perceived disability substantially limits a major life activity.'" Koci., 69 F. Supp. 3d at 489 (quoting Rubano v. Farrell Area School Dist., 991 F. Supp. 2d 678, 694 (W.D. Pa. 2014)). Evidence of close proximity between an employer learning of facts giving rise to the perception of a disability and adverse employment action also is a basis for a claim under the PHRA. Decker v. Alliant Techs., LLC, 871 F. Supp. 2d 413, 423, 427-28 (E.D. Pa. 2012); Ramage v. Rexcot Sys. Grp., Inc., 834 F. Supp. 2d 309, 326-28 (E.D. Pa. 2011).

influenza, being impairments of a temporary nature 'with little or no long term or permanent impact,' cannot as a matter of law substantially limit an individual in a major life activity" (quoting EEOC Interpretive Guidance, 29 C.F.R. Pt. 1630, App. § 1630.2(j)).  Here, nothing on the face of the Amended Complaint establishes that Defendants perceived Hudson to have an impairment that was minor or temporary.  Thus, if the Defendants wish to pursue an argument that they perceived Hudson to have such an impairment, they must do so on summary judgment or at trial based on the evidence.  Their argument cannot support a motion to dismiss.  See Warren Gen. Hosp., 643 F.3d at 84 (on a motion to dismiss the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to plaintiff").

### D. Striking Punitive Damages from the Amended Complaint is Unnecessary

The Amended Complaint contains one count under the ADA and one count under the PHRA and states a single, combined "Prayer for Relief" that seeks "punitive damages only as permitted by applicable law."  Am. Compl. at 12, ¶ (e).  Defendants move to strike punitive damages from the Amended Complaint.  Mot. at 14-15.  Hudson concedes that punitive damages are not permitted under the PHRA but states that he seeks punitive damages with respect to his ADA claim in Count I.  Opp. at 12.  Defendants do not contest that punitive damages are permitted by the ADA.  See also 42 U.S.C. § 1981a(b)(1) (permitting punitive damages for discriminatory conduct committed with malice or reckless indifference).  Accordingly, Hudson's prayer for "punitive damages only as permitted by applicable law" is appropriate and need not be stricken.

### E. Hudson is Entitled to a Jury Trial on His PHRA Claim

Defendants seek to strike Hudson's jury demand with respect to his PHRA claim.  Mot. at 15-16.  They point to Wertz v. Chapman Twp., in which the Pennsylvania Supreme Court held that there is no right to a jury trial for PHRA claims.  559 Pa. 630, 741 A.2d 1272 (1999).

However, as the Third Circuit held in Marra v. Philadelphia Hous. Auth., "'[t]he right to a jury trial in federal court, regardless of whether the claim arises under state law, presents a question of federal law.'" 497 F.3d 286, 313 (3d Cir. 2007), as amended (Aug. 28, 2007) (quoting In re City of Philadelphia Litig., 158 F.3d 723, 726 (3d Cir. 1998)).  The Marra court held, regardless of Wertz, that in a federal court, a plaintiff has a right to jury trial on a PHRA claim pursuant to the Seventh Amendment.  Id. at 313-14.  Accordingly, Defendants' argument in favor of striking Hudson's jury trial demand as to his PHRA claim is meritless.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion will be granted in part and denied in part. Hudson will be granted leave to file a Second Amended Complaint that contains amendments consistent with the terms of this Memorandum Opinion within 14 days of the issuance of the accompanying Order.  The motion will be denied in all other respects.


Date:  October 7, 2016


                            BY THE COURT:


                            */s/ Marilyn Heffley*
                            MARILYN HEFFLEY
                            UNITED STATES MAGISTRATE JUDGE